UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | : | Case No: |
| | : | |
| v. | : | VIOLATION: |
| | : | |
| SOPHIA KIM, | : | 18 U.S.C. § 1344(2) |
| also known as "Sophia Kim Sebold" and | : | (Bank Fraud) |
| "Sookyeong Kim Sebold," | : | |
| | : | |
| Defendant. | : | **<u>FILED UNDER SEAL</u>** |

**<u>AFFIDAVIT IN SUPPORT OF CRIMINAL COMPLAINT</u>**

I, Jeffrey Schurott, being first duly sworn, hereby depose and state as follows:

**PURPOSE OF AFFIDAVIT**

1. This Affidavit is submitted in support of a criminal Complaint charging SOPHIA KIM, also known as "Sophia Kim Sebold" and "Sookyeong Kim Sebold" ("KIM") with Bank Fraud, in violation of 18 U.S.C. § 1344(2). I respectfully submit that the Affidavit establishes probable cause to believe that KIM participated in a scheme to defraud the Kirov Academy of Ballet. I request that the Court issue an arrest warrant for KIM, pursuant to Federal Rule of Criminal Procedure 4(a).

**BACKGROUND OF AFFIANT**

2. I am a Special Agent with the Federal Bureau of Investigation ("FBI"), and have been so employed since September 2017. After graduating from the FBI Academy at Quantico, Virginia, I was assigned to the Washington Field Office of the FBI where I investigate a variety of criminal matters including, but not limited to, corporate fraud, complex financial crimes, and other white-collar crimes. Through my employment with the FBI, I have gained knowledge in the use of various investigative techniques including the utilization of physical surveillance, investigative interviews, financial investigations, the service of Administrative and Grand Jury Subpoenas, and

the execution of search and arrest warrants. As a federal agent, I am authorized to investigate violations of laws of the United States, and as a law enforcement officer, I am authorized to execute warrants issued under the authority of the United States.

3. The facts and information contained in this Affidavit are based on my personal knowledge and observations, information provided to me by others involved in the investigation, and a review of documents and records. This Affidavit does not contain each and every fact known to the government. It contains only those facts necessary to support a finding of probable cause for a Complaint. The dates listed in the Affidavit should be read as "on or about" dates.

### STATEMENT OF FACTS SUPPORTING PROBABLE CAUSE

4. The FBI has been investigating a scheme to defraud BB&T Bank and SunTrust Bank, by and through Kirov Academy of Ballet accounts held in the care, custody, and control of BB&T Bank and SunTrust Bank. Both BB&T Bank and SunTrust Bank are financial institutions within the meaning of 18 U.S.C. § 20, whose deposits are insured by the Federal Deposit Insurance Corporation.

5. The Kirov Academy of Ballet ("KAB") is a 501(c)(3) organization located in the District of Columbia. According to Witness One, an employee of KAB, in or about July 2017, the organization hired KIM as comptroller. According to Witness One, KIM had access to KAB's bank accounts, debit card, and credit card. According to Witness Two, the checks for KAB's BB&T checking account were maintained in a locked filing cabinet in the office space used by KIM and Witness Two. Only KIM and Witness Two had keys to the filing cabinet. When KAB needed more checks, Witness Two ordered them from BB&T Bank, and the checks were delivered to KAB by mail. According to Witness One, though KIM sometimes did work from her home, KIM was not authorized to remove checks from the KAB premises and there was no legitimate business

reason for KIM to have checks offsite. Also according to Witness One, KIM was the only KAB employee with access to the organization's debit card. Due to performance issues, KAB decided to terminate KIM from employment in September 2018.

6. On or about September 20, 2018, Witness Three, also an employee of KAB, and KIM replaced KIM's name on the KAB BB&T Bank and SunTrust Bank accounts. On or about September 20, 2018, KIM admitted to Witness Three that she had taken approximately $800,000 from the KAB BB&T Bank and SunTrust Bank accounts due to a gambling addiction and other financial problems.

7. On or about September 21, 2018, KIM contacted Witness One and admitted using her position as comptroller to misappropriate KAB funds, expressed remorse, and indicated she wanted to repay KAB. KIM requested to meet with Witness One, and KIM and Witness One agreed to meet for lunch.

8. On or about September 24, 2018, KIM and Witness One met for lunch. Prior to the meeting, Witness One prepared a written document, for KIM's signature, for KIM to acknowledge taking at least $800,000 from KAB for "gambling purposes" and to acknowledge that her actions may result in criminal charges against her. At the lunch meeting, KIM apologized for taking the money and stated that she deposited some money back into KAB bank accounts when she was successful at gambling. According to Witness One, KIM read the document several times before signing, repeatedly apologized to Witness One, and expressed no hesitancy before signing the document.

9. Your affiant has reviewed the two-page document, dated September 24, 2018 and signed by KIM, entitled, "Admission of guilt, promissory note, and Deed of Trust." In the document, KIM admitted the following:

> This is to confirm that on September 20, 2018, I confessed to [Witness One] and on September 21, I confessed to [Witness Three] and [Witness Four], that during the term of my employment with KAB from July 2017 to the present date, I have been misusing funds of the Academy which have been entrusted to my care as Controller. I have been abusing privileged related to the use of a debit card and made unauthorized withdrawals from KAB bank accounts (BB&T and SunTrust Bank) in the amount of approximately $800,000 to the best of my knowledge. The amount could be higher.
>
> I have used these funds for gambling purposes and recognize that this may result in criminal charges being lodged against me for embezzlement, fraud, negligence, and employee theft. I have all intention of reimbursing these funds to the Academy and making the Academy whole as soon as possible.

10. On or about November 8, 2018, your affiant interviewed KIM. During the interview, KIM admitted taking approximately $800,000 from KAB by using KAB debit and credit cards, and cash withdrawals from KAB's BB&T bank account to support KIM's gambling. KIM also admitted writing checks from KAB's BB&T bank account payable to "Cash," and signing and cashing those checks to use the money to gamble. During the interview, KIM further identified transactions in which she used KAB's debit card to withdraw cash at MGM National Harbor Casino in Maryland to gamble.

11. On or about November 9, 2018, KIM contacted FBI Special Agent (SA) Brian Wickham and requested to meet. During the meeting, KIM again admitted using KAB funds to support her gambling habit, and further stated that when she was successful at gambling, she would return those funds to KAB. KIM presented SA Wickham with receipts showing 11 such deposits into KAB bank accounts.

12. According to information provided to KAB by an outside accounting firm, between January 9, 2018 and September 21, 2018, KIM misappropriated approximately $1,501,285.13 from KAB's BB&T Bank and SunTrust Bank accounts through unauthorized check, debit card, and credit card transactions. KAB also incurred approximately $731.08 in fees relating to these

unauthorized transactions, resulting in a total loss of approximately $1,502,016.21.

13. Specifically, between January 9, 2018, and September 17, 2018, KIM wrote 68 unauthorized checks to "Cash" or to "Sophia Kim," in whole-dollar amounts ranging from $500 to $12,000, totaling approximately $377,200. These checks were signed only by KIM, did not have supporting documentation, and were drawn on KAB's BB&T Bank account, and two SunTrust Bank accounts. KIM cashed some of these checks at the BB&T Bank located at 1909 K Street, N.W., Washington, D.C.

14. Between January 9, 2018, and September 21, 2018, KIM conducted 197 unauthorized debits and cash withdrawals, which did not have supporting documentation, totaling approximately $479,283. These unauthorized debits and cash withdrawals drawn on KAB's BB&T Bank account, and two SunTrust Bank accounts. These transactions incurred 161 additional related automated teller machine ("ATM") fees totaling approximately $518. The 197 unauthorized debits and cash withdrawals include unauthorized 120 debits and withdrawals at MGM National Harbor Casino in Oxon Hill, MD, totaling approximately $392,749, and 44 other unauthorized debits and withdrawals at locations in Oxon Hill, MD. KIM returned approximately $27,500 to KAB through 4 ATM deposits.

15. Between January 25, 2018, and September 19, 2018, KIM conducted 139 unauthorized credit card transactions, which did not have supporting documentation, totaling approximately $681,751 (minus approximately $9,448 in vendor credits and cash returned to KAB). KIM conducted these unauthorized credit card transactions using KAB's BB&T corporate credit card, which had been issued to KIM. These transactions incurred 9 additional credit card fees totaling approximately $213.08. The 139 unauthorized credit card transactions include unauthorized 120 credit card charges at MGM National Harbor Casino in Oxon Hill, MD, totaling

approximately $675,277, and 6 other credit card charges with Nuskin cosmetics, totaling approximately $3,671.

## CONCLUSION

16.     Based on the foregoing, your Affiant respectfully submits that probable cause exists to believe that KIM has committed Bank Fraud in violation of 18 U.S.C. § 1344.  I respectfully request that the Court issue an arrest warrant for KIM.

The statements above are true and accurate to the best of my knowledge and belief.

_____
Jeffrey Schurott
Special Agent
Federal Bureau of Investigation

SUBSCRIBED and SWORN to me this \_\_\_th day of November, 2019.

_____
G. Michael Harvey
United States Magistrate Judge